Case 4:21-cv-04221   Document 29   Filed on 07/27/22 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
July 27, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JADA MONAE RHODES | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-cv-04221 |
| | § | |
| MCCALL-N LTD, ADEL ALTAIRE, | § | |
| EFRAIN PORTILLO, AND | § | |
| GREGORY BELTON | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before me is a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim filed by McCall-N, Ltd. d/b/a Sterling McCall Nissan ("Sterling McCall"), Adel Altaire, Efrain Portillo, and Gregory Belton (collectively, the "Sterling McCall Defendants"). *See* Dkt. 18. After reviewing the motion, response, reply, and applicable law, I recommend that the motion should be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

This background section is taken directly from Plaintiff's Amended Complaint and Request for Preliminary Injunction ("Amended Complaint"). *See* Dkt. 15. For purposes of considering a Rule 12(b)(6) motion to dismiss, I accept as true all well-pleaded factual allegations in the Amended Complaint.

On December 11, 2021, Jada Rhodes ("Rhodes") visited Sterling McCall to purchase a vehicle. Gregory Belton, the car salesman assigned to assist Rhodes, told her that he had arranged a deal to finance a vehicle through Chartway Federal Credit Union ("Chartway"). After completing some paperwork and making a $1,000 deposit, Rhodes left Sterling McCall that day with a car.

Two days later, on December 13, 2021, Rhodes returned to Sterling McCall because the car she had purchased was infested with bugs. Sterling McCall tried to clean the car to get rid of the bugs. Despite those efforts, Rhodes saw more bugs in the vehicle later that day and informed Sterling McCall that she no longer wanted the car. A Sterling McCall employee told her "to come back . . . the following day to find another car of [her] liking." Dkt. 15 at 3.

After several unsuccessful visits to Sterling McCall, Rhodes finally got another car on December 15, 2021. That day, she "signed all the paperwork with [Sterling McCall employee] Efrain Portillo and the car was again financed through" Chartway. *Id*. She drove away with her new vehicle.

On December 17, 2021, Rhodes sent Chartway a letter seeking to rescind the vehicle transaction. Rhodes alleges that another Sterling McCall employee, Adel Altaire, informed her that Chartway had refused to conduct any future business with her because of the letter she sent seeking rescission. *See id*. at 3–4.

Rhodes claims that the Sterling McCall Defendants attempted to improperly repossess her vehicle by luring her back to the dealership to contract with another lender. She further alleges that Sterling McCall shared her "consumer report illegally with other organizations and financial institutions." *Id*. at 8. This caused her credit score to drop from 670 to 596 in a matter of days and made it impossible for her to obtain additional extensions of credit.

Given this series of events, Rhodes filed suit against the Sterling McCall Defendants and Chartway for violations of: (1) the Fair Credit Reporting Act ("FCRA"); (2) the Truth in Lending Act ("TILA"); (3) several criminal statutes under Title 18 of the United States Code; and (4) 12 U.S.C. § 83.

## LEGAL STANDARD

Rule 12(b)(6) provides that a defendant is entitled to dismissal when the plaintiff fails to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This context-specific inquiry "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In analyzing a Rule 12(b)(6) motion, I must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (cleaned up). Allegations relying on mere speculation are nonactionable, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I will walk through each cause of action identified in Rhodes's Amended Complaint.

**A.** **FAIR CREDIT REPORTING ACT**

In her Amended Complaint, Rhodes asserts that the Sterling McCall Defendants violated the FCRA by unlawfully obtaining her consumer report and sharing it with other financial institutions without her authorization. She claims that Sterling McCall caused multiple creditors to make multiple inquiries on her credit report, causing her credit rating to drop and harming her reputation.

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To achieve this purpose, the FCRA imposes various duties on "consumer reporting agencies" and "furnishers" of credit information. In particular, the "FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the FCRA." *Norman v. Northland Grp. Inc.*, 495 F. App'x 425, 426 (5th Cir. 2012) (citing 15 U.S.C. §§ 1681b(f), 1681n(a)).

"[A] plaintiff must establish three elements in order to sustain a claim of improper use or acquisition of a credit report: (i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." *McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp. 2d 855, 867 (E.D. Mich. 2006). "[A] showing of a permissible purpose is a complete defense." *Stonehart v. Rosenthal,* No. 01 CIV. 651 (SAS), 2001 WL 910771, at *3 (S.D.N.Y. Aug. 13, 2001). The FCRA expressly permits a creditor to access a consumer's credit report for any purpose with the consumer's written authorization. *See* 15 U.S.C. § 1681b(a)(2) (a consumer reporting agency may furnish a consumer report "[i]n accordance with the written instructions of the consumer to whom it relates").

Rhodes executed a Credit Application when she visited Sterling McCall on December 11, 2022.[1] That document, to which Rhodes affixed her signature, specifically provides as follows:

> In connection with this application for credit, prospective creditors may request a consumer (credit) report. . . . Prospective creditors may order subsequent consumer (credit) reports. I authorize prospective creditors to ask my past and current creditors . . . about my credit performance with them. Provision by prospective creditors of a copy of this authorization shall serve as my direction that my credit references provide my credit performance information.

Dkt. 18-1 at 1. This language is a showstopper, as Rhodes gave a blanket authorization for others to access her credit report with regard to her financing the purchase of a vehicle. *See Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d

---

[1] In considering a motion filed pursuant to Rule 12(b)(6), a court may consider: (1) the pleadings and any attachment to the pleadings; (2) documents incorporated into the complaint by reference; and (3) documents that a defendant attaches to its motion to dismiss if those documents are referenced in the plaintiff's complaint and are central to the plaintiff's claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). In her Amended Complaint, Rhodes alleges that she arranged for vehicle financing by signing paperwork at Sterling McCall on December 11, 2021. The Sterling McCall Defendants have attached to their Motion to Dismiss the Credit Application that Rhodes filled out and signed on December 11, 2021. This document is, without question, central to Rhodes's claims. I will, therefore, consider it as I analyze the Motion to Dismiss.

4

1043, 1046 (7th Cir. 2005) ("[T]he [FCRA] does not require that consumers expressly approve each request for a report."); *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 720 (E.D. Va. 2005) ("The FCRA permits a creditor (user) to access a consumer's credit report for any purpose with the consumer's written authorization, *or* for certain purposes specified in the statute in the absence of such express authorization."). As a matter of law, this means that the Sterling McCall Defendants had a permissible purpose to make credit inquiries. *See Rydell v. Servco Auto Windward*, No. CIV. 11-00485 JMS, 2011 WL 5506088, at *3–4 (D. Haw. Nov. 9, 2011) (dismissing FCRA claim at the Rule 12(b)(6) stage because defendant had a permissible purpose to obtain plaintiff's credit reports per plaintiff's written authorization). Because Rhodes's allegations as set forth in the Amended Complaint are insufficient to show that the Sterling McCall Defendants accessed her credit report without a permissible purpose, the FCRA claim must be dismissed.

**B.    TRUTH IN LENDING ACT**

The TILA is a strict-liability statute that requires a lender in a commercial credit transaction to disclose certain terms and conditions of the transaction to a borrower prior to consummating the loan. *See* 15 U.S.C. § 1601 *et seq*. The TILA's purpose is to promote the "informed use of credit . . . [and] an awareness of the cost thereof by consumers" by "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." *Id*. § 1601(a).

Under the authority of the TILA, the Federal Reserve Board has promulgated rules to implement the statute. *See* 15 U.S.C. § 1604(a). These rules, found at 12 C.F.R. § 226 *et seq*., are commonly known as "Regulation Z." Together, the TILA and Regulation Z require lenders to make a series of material disclosures to borrowers for transactions that do not involve a continuing line of credit, such as the automobile transaction involved here. *See* 15 U.S.C. § 1638 (listing required disclosures); 12 C.F.R. § 226.18 (listing required disclosures). To comply with its

TILA duties, a creditor must disclose its name, the amount financed, the consumer's right to obtain an itemization of the amount financed, the finance charge, the annual percentage rate, the payment schedule, the total of payments, and the total sale price. *See* 15 U.S.C. § 1638.

The thrust of Rhodes's TILA allegations is that the Sterling McCall Defendants violated the statute by "fail[ing] to disclose clearly and conspicuous[ly] the finance charge." Dkt. 15 at 8. Rhodes also alleges that the Sterling McCall Defendants violated the TILA by "improper disclosure of amount financed, finance charge, payment schedule, total of payments, annual percentage rate, and security interest disclosures." *Id.* at 10.

At this early juncture in the case, these allegations are, without question, sufficient to survive a motion to dismiss. My task at the Rule 12(b)(6) stage is simply to determine whether the live pleadings contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Viewing the facts as alleged by Rhodes in the light most favorable to her, as I must, I conclude that Rhodes has sufficiently stated a claim that the Sterling McCall Defendants violated the TILA by failing to make certain disclosures.

At the same time, I need to clearly state that Rhodes's claim that the Sterling McCall Defendants violated the TILA by failing to rescind the vehicle transaction fails as a matter of law. The right of rescission provided for under the TILA *only* applies to a "consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a). Importantly, § 1635 "provides no right of rescission where a security interest is taken in an automobile." *Hudson v. Scharf*, No. C21-5827JLR, 2022 WL 1227111, at *2 (W.D. Wash. Apr. 25, 2022). *See also Hardaway v. Toyota Fin. Servs.*, No. 4:21-CV-194-KPJ, 2022 WL 317758, at *3 (E.D. Tex. Feb. 2, 2022) ("Plaintiff has not alleged facts showing that the TILA right to re[s]cission applies to Plaintiff's purchase of the Vehicle."); *Walker v. U.S. Bank*, No. 3:21-cv-758, 2021 WL 5701498, at *3 (N.D. Tex. Nov. 1,

2021) (dismissing the plaintiff's TILA claim because the TILA rescission provisions did not apply to the plaintiff's "purchase of a Chevrolet Silverado, a vehicle which does not qualify as a 'principal dwelling'").

### C. ALLEGED VIOLATIONS OF FEDERAL CRIMINAL STATUTES

In Count 3 of her Amended Complaint, Rhodes alleges claims for relief based on three criminal statutes: 18 U.S.C. §§ 1341, 1343, and 1951. Sections 1341 and 1343 are, respectively, the federal criminal mail and wire fraud statutes. Section 1341 prohibits the use of the United States mails in furtherance of fraudulent schemes, *see* 18 U.S.C. § 1341, while section 1343 outlaws forms of fraud carried out through means of communication other than mail. *See id*. § 1343. Section 1951 makes it unlawful for a person to interfere with commerce by threats of violence. *See id*. § 1951(a).

It has long been held that there is no general right to bring a private action under federal criminal statutes. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id*. Without a clear intent by Congress to establish a private remedy for a violation of a criminal statute, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id*. at 286–87.

Nothing in the statutory language of §§ 1341, 1343, or 1951, nor their legislative histories, remotely suggests that Congress intended to provide a civil remedy for an alleged violation of these criminal statutes. That is why the Fifth Circuit has expressly held that there is no private right of action for violations of § 1341 or § 1343. *See Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974) (holding that 18 U.S.C. § 1343 does not provide a private right of action for civil litigants); *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977) (holding the same for § 1341). Rhodes's claim under § 1951 likewise fails because it is also a criminal statute with no private right of action. *See Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999) (holding that §

7

1951 does not convey a private right of action); *Algoe v. Texas*, No. 3:15-CV-1162-D, 2016 WL 6902154, at *9 (N.D. Tex. Sept. 29, 2016) (same); *Barrett v. City of Allentown*, 152 F.R.D. 50, 56 (E.D. Pa. 1993) ("18 U.S.C. § 1951 is a bare criminal statute which contains no indication that a civil remedy is available.").

### D.     ALLEGED VIOLATION OF 12 U.S.C. § 83

Rhodes's final claim for relief is brought under 12 U.S.C. § 83, a provision of the National Bank Act which prohibits national banks from making "any loan or discount on the security of the shares of its own capital stock." 12 U.S.C. § 83(a). It is not clear from the Amended Complaint whether this claim is directed solely at Chartway. Out of an abundance of caution, I will assume that Rhodes also intended to bring this claim against the Sterling McCall Defendants.

Regardless of who this claim is brought against, it fails because § 83 does not "provide borrowers with a private right of action . . . for violations of the statute nor should one be implied." *Davis v. Countrywide Home Loans*, No. 09 CIV. 8606 RJS HBP, 2010 WL 3219306, at *8 (S.D.N.Y. July 23, 2010). *See Bey v. Am. Honda Fin. Servs. Corp.*, No. 8:17-CV-759-T-33MAP, 2017 WL 11018006, at *2 (M.D. Fla. Apr. 27, 2017) (same). Provisions of the National Bank Act that do not prescribe a penalty for noncompliance, such as § 83, may be enforced only by the government. *See Thompson v. St. Nicholas Nat'l Bank*, 146 U.S. 240, 251 (1892) ("[I]t has been held repeatedly by this court that where the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private parties."). Because there is no private right of action under § 83, Rhodes's claim under that statute must be dismissed.

### CONCLUSION

For the reasons identified in this Memorandum and Recommendation, I recommend that the Sterling McCall Defendants' 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. 18) be **GRANTED** in part and **DENIED** in part. To

be specific, Rhodes's FCRA claim should be dismissed because the Sterling McCall Defendants had a permissible purpose to make credit inquiries. The claims brought under 18 U.S.C. §§ 1341, 1343, and 1951, and 12 U.S.C. § 83 should be dismissed because these statutes do not provide a private right of action. Rhodes's TILA claim seeking rescission of the vehicle transaction should be dismissed because there is no right of rescission under the statute where a security interest is taken in a vehicle. The one claim that should survive the motion to dismiss stage is Rhodes's TILA claim against the Sterling McCall Defendants for their alleged failure to disclose certain terms and conditions of the transaction.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 27th day of July 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE